FILED by __VK__ D.C.
ELECTRONIC

**JAN. 31, 2008**

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. _____

LISA GRAY, individually and on behalf
of a class of similarly situated individuals,

Plaintiff,

v.

CELLCO PARTNERSHIP, a Delaware General
Partnership d/b/a Verizon Wireless, and MOBILE,
MESSENGER AMERICAS, INC.,
a Delaware corporation,

Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

**08-60146-CIV-ALTONAGA/TURNOFF**

### DEFENDANT CELLCO PARTNERSHIP'S NOTICE OF REMOVAL

Defendant Cellco Partnership d/b/a Verizon Wireless ("Verizon"), pursuant to

28 U.S.C. § 1441, removes to this Court the state action described below, which is within the

original jurisdiction of this Court and properly removed under 28 U.S.C. §§ 1332, 1446, and

1453. Pursuant to 28 U.S.C. § 1446(d), copies of this Notice of Removal are being served upon

counsel for Plaintiff Lisa Gray and filed with the Clerk of the Circuit Court of Broward County,

Florida as an exhibit to a Notice to State Court of Removal to Federal Court. A copy of the

Notice being filed in state court is attached hereto (without exhibits) as Exhibit A.

### PROCEDURAL HISTORY AND TIMELINESS OF REMOVAL

1.   On December 20, 2007, Plaintiff Lisa Gray filed a purported class action captioned

*Gray v. Cellco Partnership, et al.*, Case No. 06-36302(09), against Verizon and Defendant

Mobile Messenger Americas, Inc. ("Mobile Messenger") in the Broward County Circuit Court

("State Court Action").

2.    Verizon was served with the State Court Action Summons and Complaint on January 3, 2008. This notice is therefore timely pursuant to 28 U.S.C. § 1446(b). Pursuant to 28 U.S.C. § 1446(a), true and correct copies of all process, pleadings, and orders served upon Verizon in the State Court Action are attached to this Notice as Exhibit B.

3.    The Circuit Court of Broward County is located within the Ft. Lauderdale Division of the Southern District of Florida. 28 U.S.C. § 84(c)(2). This Notice of Removal is therefore properly filed in this Court pursuant to 28 U.S.C. § 1441(a).[1]

## ALLEGATIONS OF THE COMPLAINT

4.    This action is a putative class action against Verizon and Mobile Messenger on behalf of Florida wireless telephone subscribers for an alleged "practice of charging cellular telephone customers for products and services the customers have not authorized." (Compl. at 1.) In particular, Plaintiff challenges Verizon's billing practices with respect to mobile content—known as premium messaging services—such as ringtones, weather alerts and stock tips. (*Id.* ¶ 6.) The content for these services are created by third parties—known as content providers—and are delivered to cell phone subscribers through premium messaging services.

5.    In general, these mobile content services offer a premium message for a certain monthly fee. (*Id.* ¶¶ 14-15.) The mobile content—such as weather reports, stock tips, and joke of the day—is delivered to the subscriber's cell phone via an "aggregator" such as Mobile Messenger. (*Id.* ¶ 7.) The "aggregator" works with "mobile content providers in arriving at the agreements that allow them to" bill through the carriers. (*Id.*) The carrier, such as Verizon, then adds the charge for the mobile content to the subscriber's monthly cell phone bill. (*Id.* ¶ 15.)

---

[1] Plaintiff has granted Verizon an extension until March 7, 2008 to respond to the Complaint. On or before that date, Verizon intends to move to compel arbitration of this matter under the parties' Arbitration Agreement and pursuant to the Federal Arbitration Act.

2

6.     Plaintiff here alleges that Defendants do not have in place proper procedures necessary to establish customer authorization prior to assessing the monthly charges.  According to Plaintiff, Verizon "cannot authenticate [] customer's authority to be billed for [] mobile content charges."  (*Id.* ¶ 28.)  Plaintiff further alleges that "Verizon's decision to continue to charge its customers for mobile content without taking steps to authenticate the representations of the mobile content providers that the customer's authority to be charged was obtained constitutes a deliberate and willful scheme to cheat large numbers of people out of small amounts of money."  (*Id.*)

7.     Plaintiff seeks to represent a putative class comprised of "all Verizon wireless telephone subscribers in Florida who suffered losses or damages as a result of Verizon billing for mobile content products and services not authorized by the subscriber."  (*Id.* ¶ 38.)  Plaintiff also purports to represent a putative class comprised of "all wireless telephone subscribers in Florida who suffered losses or damages as a result of incurring charges on their cellular telephone bills from or on behalf of Mobile Messenger not authorized by the subscriber."  (*Id.*)

8.     On behalf of Plaintiff and the putative classes, the Complaint attempts to state claims for:  (1) breach of contract against Verizon; (2) restitution/unjust enrichment against Mobile Messenger; and (3) tortious interference with contract against Mobile Messenger.  The Complaint seeks, *inter alia*, compensatory damages, punitive damages, declaratory relief, restitution, attorney's fees, and costs.  (Compl. at 14.)

9.     Verizon disputes Plaintiff's allegations, believes the Complaint lacks merit, and denies that Plaintiff or the putative classes have been harmed in any way.

## BASIS FOR REMOVAL

10.    This action is within the original jurisdiction of this Court, and removal is therefore proper under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d), which grants district courts original jurisdiction over class actions in which the amount in controversy exceeds $5,000,000 and any member of the class of plaintiffs is a citizen of a State different from any defendant.  As set forth below, this action satisfies each of the requirements of Section 1332(d)(2) for original jurisdiction under CAFA.  *See Evans v. Walter Indus.*, 449 F.3d 1159 (11th Cir. 2006); *Colomar v. Mercy Hosp., Inc.*, Case No. C-05-22409, 2007 U.S. Dist. LEXIS 52659  (S.D. Fla. 2007) (denying motion to remand under CAFA).

11.    Covered Class Action.  This action meets the CAFA definition of a class action, which is "any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure."  28 U.S.C. §§ 1332(d)(1)(B), 1453(a) & (b).  (*See* Compl. ¶ 38.)

12.    Class Action Consisting of More than 100 Members.  The Complaint alleges that "there is no less than 1,000 class members in each respective class. "  (Compl. ¶ 38.) Accordingly, based on Plaintiff's allegations, the aggregate number of class members is greater than 100 persons for purposes of 28 U.S.C. § 1332(d)(5)(B).

13.    Diversity.  The required diversity of citizenship under CAFA is satisfied because "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A).  Plaintiff Lisa Gray is a citizen of the State of Florida.  (Compl. ¶ 1.) Plaintiff's Complaint is brought against Verizon, "a Delaware general partnership with its principal offices in the State of New Jersey," and Mobile Messenger, "a Delaware corporation with its headquarters and principal place of business in the State of California."  (*Id.* ¶¶ 2-3.)  As of the time of removal, the citizenship of Verizon has not changed.  Accordingly, a member of

the purported class in this case—Plaintiff Gray —is a citizen of a state (Florida) different from a defendant (Delaware, New Jersey and California), thus satisfying the diversity requirements of 28 U.S.C. § 1332(d)(2)(A).

14.   Amount in Controversy.  Under CAFA, the claims of the individual class members are aggregated to determine if the amount in controversy exceeds the required "sum or value of $5,000,000, exclusive of interest and costs." 28 U.S.C. §§ 1332(d)(2), (d)(6).  Plaintiff alleges that the challenged practices are "inflicting damages of an untold magnitude." (Compl. ¶ 10.) Without conceding any merit to the Complaint's allegations or causes of action, the amount in controversy here satisfies this jurisdictional threshold.

15.   Amount in Controversy – Compensatory Damages.  The amount in controversy with respect to compensatory damages alone exceeds $5 million.  The Complaint alleges that "Verizon has for years been systematically, repeatedly and without authorization," charging customers for mobile content. (Compl. ¶ 27.)  The Complaint further alleges that Verizon engaged in a "deliberate and willful scheme to cheat" customers by purportedly failing to validate the authority of customers to accept mobile content charges.  (Id. ¶ 28.)  For the year 2007, Verizon wireless subscribers in Florida have been billed more than $12,800,000 for mobile content services, and since inception they have been billed more than $24,000,000 for such services. (Affidavit of Bill Medrano ¶ 3, attached hereto as Exhibit C.)  Thus, Plaintiff's allegations place in controversy an amount plainly in excess of $5 million.  While Verizon disputes that that it is liable to Plaintiff or the putative class, or that Plaintiff or the putative class suffered injury or incurred damages in any amount whatsoever, for purposes of compliance with CAFA, the matter in controversy exceeds $5 million.

16.   <u>Amount in Controversy — Punitive Damages</u>.  The Complaint also seeks punitive

damages. (Compl. at 14.)  Punitive damages are considered part of the amount in controversy.

"When determining the jurisdictional amount in controversy in diversity cases, punitive damages

must be considered." *Holley Equipment Co. v. Credit Alliance Corp.*, 821 F.2d 1531, 1535 (11th

Cir. 1987); *Awad v. Cici Enters.*, Case No. C-06-1278-T-24TBM, 2006 U.S. Dist. LEXIS 71998,

*3-4 (M.D. Fla. 2006) (same).  Verizon believes that no damages, compensatory or punitive,

should or will be awarded in this case; however, for purposes of this amount in controversy

requirement, claimed punitive damages may be considered.

17.   <u>Amount in Controversy – Attorneys' Fees</u>.  Plaintiff also seeks an award of

attorneys' fees. (Compl. at 14.)  This amount is likewise included in the amount in controversy

calculation.  *See Missouri State Life Ins. Co. v. Jones*, 290 U.S. 199, 202 (1933).  Verizon

believes that no attorneys' fees should or will be awarded in this case; however, for purposes of

this amount in controversy requirement, claimed attorneys' fees may be considered.

18.   <u>No CAFA Exclusions</u>.  The action does not fall within any exclusion to removal

jurisdiction recognized by 28 U.S.C. § 1332(d).  As neither defendant is a citizen of the State of

Florida, the state in which the action was filed, the exclusions to removal jurisdiction set forth in

28 U.S.C. § 1332(d)(3)-(4) cannot apply, and because no other exclusion applies, this action is

removable pursuant to CAFA, 28 U.S.C. §§ 1332(d) and 1453(b).

## CONCLUSION

19.   For all of the reasons stated above, this action is within the original jurisdiction of

this Court pursuant to 28 U.S.C. § 1332(d).  Accordingly, this action is removable pursuant to

28 U.S.C. § 1441(a) and § 1453.

WHEREFORE, Defendant Verizon gives notice that the above-described action pending

against it in the Circuit Court of Broward County, Florida, is removed to this Court.

Dated:  January 31, 2008

Respectfully submitted,

CELLCO PARTNERSHIP
d/b/a VERIZON WIRELESS

By:  _____
One of Its Attorneys

Marcos Daniel Jiménez
Fla. Bar No. 0441503
mdj@kennynachwalter.com
Amanda M. McGovern
Fla. Bar No. 964263
amm@kennynachwalter.com
KENNY NACHWALTER, P.A.
1100 Miami Center
201 South Biscayne Boulevard
Miami, FL  33131
Tel.    (305) 373-1000
Fax    (305) 372-1861

*Of counsel:*

Penelope A. Preovolos, Esq.
Geoffrey Graber, Esq.
MORRISON & FOERSTER
425 Market Street
San Francisco, CA  94105
Tel.    (415) 268-7000
Fax    (415) 268-7522

Dan Marmalefsky, Esq.
MORRISON & FOERSTER LLP
555 West Fifth Street
Suite 3500
Los Angeles, CA  90013-1024
Tel.  (213) 892-5809
Fax  (213) 892-5454

7

## CERTIFICATE OF SERVICE

**We hereby certify** that a true and correct copy of the foregoing was served by U.S. mail on January 31, 2008, on:

David P. Healy, Esq.
Law Offices of David P. Healy, PL
2846-Remington Green Cr.
Tallahassee, FL 32308
Tel.:    (850) 222-5400
Fax:    (850) 222-7339
Email: dhealy@nettally.com
*Attorneys for Plaintiff*

_____
Amanda M. McGovern

321587.1



# EXHIBIT A

IN THE CIRCUIT COURT OF THE
17th JUDICIAL CIRCUIT IN AND FOR
BROWARD COUNTY, FLORIDA

CASE NO.: 07-36302 (09)

LISA GRAY, individually and on behalf
of a class of similarly situated individuals,

      Plaintiff,

v.

CELLCO PARTNERSHIP, a Delaware General
Partnership d/b/a Verizon Wireless, and
MOBILE MESSENGER AMERICAS, INC.,
a Delaware corporation,

      Defendants.

_____/

## NOTICE OF FILING AND SERVICE OF NOTICE OF REMOVAL

TO:   Clerk of the Circuit Court
      17th Judicial Circuit
      Broward County, Florida

    PLEASE TAKE NOTICE THAT on January 31, 2008, a Notice of Removal was filed in the

above-captioned matter in the United States District Court for the Southern District of Florida,

pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, and that a copy of said Notice of Removal was duly

served on Plaintiff's counsel.

    I hereby certify that the attached copy of the Notice of Removal is a true and correct copy of

the original which was filed in the Office of the Clerk of the United States District Court for the

Southern District of Florida, and was served on Plaintiff's counsel.

    Pursuant to and in accordance with 28 U.S.C. § 1446, removal of this action is effective

immediately upon the filing of this Notice of Filing and Service of Notice of Removal.

**Page 1 of 3**

CASE NO.: 07-36302 (09)

Dated: January 31, 2008
     Miami, Florida

Respectfully submitted,

_____
Marcos Daniel Jiménez (Fla. Bar No. 0441503)
mjimenez@kennynachwalter.com
Amanda M. McGovern (Fla. Bar No. 964263)
amcgovern@kennynachwalter.com
KENNY NACHWALTER, P.A.
201 South Biscayne Boulevard
1100 Miami Center
Miami, FL  33131-4327
Phone: (305) 373-1000
Fax: (305) 372-1861
***Attorneys for Defendant Cellco Partnership***

Of Counsel:

Penelope A. Preovolos, Esq.
ppreovolos@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105-2482
Phone:  (415) 268-7000
Fax:  (415) 268-7522

Dan Marmalefsky, Esq.
dmarmalefsky@mofo.com
MORRISON & FOERSTER LLP
555 West Fifth Street
Suite 3500
Los Angeles, CA  90013-1024
Phone:  (213) 892-5809
Fax:  (213) 892-5454

***Attorneys for Defendant Cellco Partnership***

**Page 2 of 3**

CASE NO.: 07-36302 (09)

## CERTIFICATE OF SERVICE

**We hereby certify** that a true and correct copy of the foregoing was served by U.S. mail on January 31, 2008, on:

David P. Healy, Esq.
Law Offices of David P. Healy, PL
2846-Remington Green Cr.
Tallahassee, FL 32308
Tel.:    (850) 222-5400
Fax:    (850) 222-7339
Email: dhealy@nettally.com
***Attorneys for Plaintiff***

_____
Amanda M. McGovern

321587.1

**Page 3 of 3**



# EXHIBIT B



# BROWARD COUNTY CIVIL COVER SHEET

**I.     Case Style**

LISA GRAY,

Plaintiff

vs.

CELLCO PARTNERSHIP d/b/a VERIZON
WIRELESS and MOBILE MESSENGER
AMERICAS, INC.

Defendants.

Case No._____

Judge_____

**II     Type Of Case** (Place an X in one box only.  If the case fits more than one type of case - select the most definitive.)

| DOMESTIC RELATIONS - DIV. "A" | TORTS - DIV. "D" | OTHER CIVIL |
|---|---|---|
| ____Simplified Dissol. (Kit) | ____Profess.  Malpractice | ____Contracts - Div. D |
| ____Dissolution | ____Products Liability | ____Condominium - Div. D |
| ____Support - IV-D | ____Auto Negligence | ____Real Property - Div. C. Mortg. Foreclosure |
| ____Support - Non IV-D | ____Other Negligence | ____Eminent Domain - Div. D |
| ____URESA - IV-D | | ____Const. Law - Div. - B Bond Validation |
| ____Adoption | | |
| ____URESA - Non IV-D | | ____Accounting - Div. Declaratory Judgements, Specific Performance - Div-C |
| ____Domestic Violence | | _X__Other - Div. |
| ____Other Domestic Relations | | |
| ____Name Change | | |

**II     Is Jury Trial Demanded In Complaint**

____Yes

____No

**III     Time Standard Applicable** (Insert date that time standard expires)

_____

SIGNATURE OF ATTORNEY OR PARTY
INITIATING ACTION

By_____     94040

STATE OF FLORIDA
BROWARD COUNTY
I, DO HEREBY CERTIFY the within and foregoing is a true
and correct copy of the original as it appears on record
and file in the office of the Circuit Court Clerk of Broward
County Florida.
WITNESS my hand and Official Seal at Fort Lauderdale
Florida, this _____ day of _____ 20 ____

JAN 3 0 2008

_____ Clerk of the Court

_____ Deputy Clerk

# IN THE CIRCUIT COURT FOR THE SEVENTEENTH JUDICIAL CIRCUIT
## IN AND FOR BROWARD COUNTY, FLORIDA

| | | |
|---|---|---|
| **LISA GRAY, individually and on behalf of a class of similarly situated individuals,** | ) ) ) | 0736302 |
| **Plaintiff,** | ) ) | **No.** |
| **v.** | ) ) ) | |
| **CELLCO PARTNERSHIP, a Delaware General Partnership d/b/a Verizon Wireless, and MOBILE MESSENGER AMERICAS, INC., a Delaware corporation.** | ) ) ) ) ) ) | **CLASS REPRESENTATION** |
| **Defendants.** | ) | |

-------------------------------------------------------x

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Lisa Gray brings this class action complaint pursuant to Florida Rule of Civil Procedure 1.220 against Cellco Partnership d/b/a Verizon Wireless ("Verizon") and Defendant Mobile Messenger Americas, Inc. ("Mobile Messenger") seeking to stop Defendants' unlawful practice of charging cellular telephone customers for products and services the customers have not authorized, a practice which has resulted in Defendants unlawfully collecting money from consumers statewide, and to obtain redress for all persons injured by their conduct. Plaintiff, for her class action complaint, alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

### Parties

1.      Plaintiff Lisa Gray is a resident of Florida.

1

2. Defendant Cellco Partnership d/b/a Verizon Wireless ("Verizon") is a Delaware general partnership with its principal offices in the State of New Jersey. Its partners include Verizon Communications, Inc., a Delaware corporation with its principal place of business in the State of New York and Vodafone Group Plc, an English public limited company with its principal place of business in England. Verizon does business throughout the State of Florida and Broward County.

3. Defendant Mobile Messenger Americas, Inc. ("Mobile Messenger"), the North American subsidiary of an Australian mobile marketing company, is a so-called "secondary aggregator" who provides billing and aggregating services in the United States to a clientele that, on information and belief, consists primarily of foreign mobile content providers that sell mobile content to consumers in the United States. On information and belief, Mobile Messenger subcontracts with domestic aggregators such as m-Qube to obtain access to m-Qube's existing domestic carrier relationships and technical infrastructure. Mobile Messenger is a Delaware corporation with its headquarters and principal place of business in the State of California. Mobile Messenger does business throughout the State of Florida and Broward County.

## Jurisdiction and Venue

4. The amount in controversy exceeds the sum of $15,000 exclusive of interest, costs and attorney's fees. This Court has jurisdiction over the subject matter.

5. Venue is properly laid in Broward County pursuant to section 47.051, Florida Statutes (2007) because Defendants conduct their regular business affairs through one or more agents or other representatives located in Broward County, Florida.

2

### Conduct Complained Of

6.      This case arises from two closely related phenomena.  The first is the capability of most cellular telephones, not only to make and receive telephone calls, but also to send and receive text messages, including -- most significantly for present purposes -- "premium" text message services.  These services, also known as "mobile content" include products that range from the basic (customized ringtones for use with cell phones, sports score reports, weather alerts, stock tips, horoscope services, and the like) to those requiring more advanced capabilities (such as direct payment services, interactive radio and participatory television).

7.      The second underlying phenomenon of this case constitutes its very core.  That is, just as providers of premium mobile content, such as Mobile Messenger, deliver their products by means of cell phone technology, they likewise charge and collect from their customers by "piggybacking" on the cell phone bills sent out by the wireless carriers, such as Verizon. Further, because the mobile content providers by themselves most often lack the wherewithal to negotiate the necessary relationships with the much larger wireless carriers, they do so with the help of third-party companies known as aggregators.  These aggregators act as middle-men, representing numerous mobile content providers in arriving at the agreements that allow them to use the billing and collection mechanisms of the wireless carriers.  In turn, both the aggregators and the wireless carriers are compensated for their services to the mobile content providers by retaining a substantial percentage of the amount each premium mobile content transaction.

8.      The rapid and largely unplanned growth of the premium mobile content industry has led both to the above-described structure and to a disastrous flaw within it.  That flaw -- understood, perpetuated, and even encouraged by carriers, aggregators, and mobile content providers such as the instant defendants -- is an open secret within the industry, but little

3

understood outside of it. In short, the billing and collection systems established by companies including Defendants in aid of the premium mobile content industry that enriches them are conspicuously free of any checks or safeguards to prevent erroneous and unauthorized charges from being added to customers' bills.

9.      As Defendants also know, significant amounts of money have been collected on account of such unauthorized charges for premium mobile content in the industry over the last few years. And while it has always been within the power of companies such as Defendants to institute simple and effective measures that would prevent this, they have instead knowingly maintained the very system that has allowed these erroneous charges. Indeed Defendants have reaped and retained their respective shares of the improper collections.

10.     While the total sales in Florida of premium mobile content in 2007 amount to a significant sum, the business is still in its infancy. The burgeoning industry has already expanded from ordinary ringtones into mass media-related products such as interactive radio and participatory voting at television and concert events and, most recently, into services that enable cell phones to function as credit cards. Unchecked, Defendants' practices will injure an ever-increasing number of unwitting consumers, inflicting damages of an untold magnitude.

### Mobile Content Providers' Role In the Scheme to Defraud

11.     Unlike transactions made using checks and credit cards, which require a signature or a highly private sixteen-digit credit card number, the only thing a mobile content provider needs to charge a consumer for its products is the consumer's cellular telephone number. Once a mobile content provider has a consumer's cell phone number, it can cause that consumer to be billed for services and products irrespective of whether the consumer actually agreed to purchase them.

4

12.     Armed with only a cell phone number, the mobile content provider can simply provide that number, along with an amount to be charged, to a billing aggregator (such as m-Qube or mBlox).  The aggregator, in turn, instructs the relevant cellular carrier to add the charge to the bill associated with that cell phone number.   The charge will then appear on the consumer's cell phone bill, often with only minimal, cryptic identifying information.

13.     Because the protections normally present in consumer transactions -- such as signatures and private credit card numbers -- are absent from this process, the likelihood of false charges increases enormously.   And because a substantial part of mobile content "sales" are effected through web sites using misleading, oblique, or inadequately explained "consent" procedures, that likelihood increases by another order of magnitude.   Mobile content providers such as Mobile Messenger have powerful financial incentives to collect as many cell phone numbers as possible but little incentive to ensure that the owners of those numbers have truly agreed to purchase their goods and services.

14.     While aggregators charge their content provider customers some upfront fees, their revenue is primarily generated through a "revenue share" on transactions for which they bill cell phone subscribers: each time a charge is incurred in connection with the purchase of mobile content services offered by a content provider, the aggregator and/or the content provider cause said charge to be billed directly on the cellular telephone bill of the carrier's customer who currently owns and/or uses the telephone number (claimed to be) associated with said purchase.

15.     The carrier then bills and collects the charge from its current subscriber, retains about a portion of the proceeds as its "revenue share" and then remits the balance to the aggregator who has direct access to its network, who retains a percentage of the balance in the

5

form of its own "revenue share," and then remits the remainder directly to the mobile content provider such as Mobile Messenger.

16.    Mobile Messenger has in Florida registered numerous transactions and processed significant amounts of dollars in transactions over recent years and have profited greatly from their arrangement with their carrier partners, aggregator partners and content provider partners.

17.    As Mobile Messenger knows, carriers such as Verizon routinely process charges for mobile content that have not been authorized by the charged party.

18.    Mobile Messenger has not only sanctioned this illegal billing, they have promoted it by facilitating partnerships between the carriers and the aggregators that contains few if any safeguards to prevent unauthorized charges.

19.    Indeed, if Defendants wanted to end this illegal billing, they could do so in an instant.  All they would have to do to ensure that they are obtaining the consent of the charged party is agree to process a unique "access code" for each customer account, provided by the carrier to the account holder and his/her authorized representatives at the time it is opened, and require that it be produced anytime a third-party attempts to charge the account. If a matching access code is not provided, no charges would be included on the customer's billing statement.

20.    But instead of implementing such a simple safeguard, Defendants have intentionally created and maintained a system that encourages fraud at every step.

### The Carrier's Role In the Scheme to Defraud

21.    Verizon uses uniform form contracts ("Service Agreements") under which customers purchase cell phone services.

22.    As described above, Verizon's services include providing access to and billing for various third-party mobile content services such as ring tones, chat services, horoscopes, stock

6

tips, weather alerts, participatory television, mobile payment services and other forms of software provided by hundreds of third-party vendors with names such as Mobile Messenger and many others.

23. Verizon has contracted with third-party providers to bill and collect from Verizon's customers the services provided by such third-party content providers, the charges for which are included directly on a customer's monthly wireless bill.

24. The duty of good faith and fair dealing, a part of every contract, requires that Verizon not bill any customer for any good or service not authorized by the customer.

25. Upon execution of said Service Agreements and activation of cellular telephone accounts, Verizon provides its customers a ten-digit cellular telephone number.

26. As explained above, unbeknownst to its customers, Verizon frequently charges consumers for services that were never authorized.

27. As a result, Verizon has for years been systematically, repeatedly and without authorization, billing its customers for purchase of products and services not agreed to by those customers. Verizon and third-party service providers have, on information and belief, profited significantly through this practice.

28. Verizon's conduct is by no means accidental. As previously alleged, it knows that many of its cellular telephone customers dispute the claim the mobile content provider's claim that such customer consented to be charged for their mobile content services. Verizon further knows that it cannot authenticate such customer's authority to be billed for such mobile content charges. In light of its knowledge of these facts, Verizon's decision to continue to charge its customers for mobile content without taking steps to authenticate the representations of the

7

mobile content providers that the customer's authority to be charged was obtained constitutes a deliberate and willful scheme to cheat large numbers of people out of small amounts of money.

29.     Because the amount Verizon is taking is small on an individual basis – as little as a few dollars to at most several hundreds of dollars per person -- and because of Verizon's vast resources and superior bargaining power, Defendants employ this scheme with the hope and expectation that its illegal conduct will go unpunished.

### The Facts Relating to Named Plaintiff

30.     In or about 2003, Plaintiff purchased new cell phone service from an authorized Verizon sales representative.

31.     On that same day, in exchange for a Verizon cell phone service plan, Plaintiff agreed to pay a specific amount each month for a period of 12 months.

32.     Upon activating her cellular telephone account, Verizon provided Plaintiff a cellular telephone number.

33.     Beginning on or about July, 2007 and continuing through at least September, 2007, Plaintiff's cell phone account was charged for unwanted mobile content services in the form of "premium" text messages from Defendants.

34.     At no time did Plaintiff authorize the purchase of these products and services offered by Defendants and at no time did Plaintiff consent to Mobile Messenger's sending of text messages to her cellular telephone.

35.     During the relevant time period, Defendants caused Plaintiff to be charged service fees for so-called "Premium" text messages provided by Defendants.  For instance, on or about August 7, 2007, Defendants charged Plaintiff $19.99 for premium text message services.

8

36.     At no time did Plaintiff authorize Defendants or anyone else to bill her for these charges.

37.     At no time did Defendants verify Plaintiff's purported authorization of these charges and no time did Defendants provide a complete refund consisting of the premium text message charges, ordinary text messages, data charges and/or back interest. Nor did Verizon provide Plaintiff an assurance that such unauthorized charges would not appear in future billing periods.

<strong>Class Representation Allegations</strong>

38.     Plaintiff brings this action on behalf of herself and two classes. Those classes are defined as follows:

A.     The "Carrier Class": a class consisting of all Verizon wireless telephone subscribers in Florida who suffered losses or damages as a result of Verizon billing for mobile content products and services not authorized by the subscriber; provided, however, that the following are excluded from this proposed Class: (i) the defendants, and (ii) any employee of a defendant.

B.     The "Mobile Content Provider Class": a class consisting of all wireless telephone subscribers in Florida who suffered losses or damages as a result of incurring charges on their cellular telephone bills from or on behalf of Mobile Messenger not authorized by the subscriber; provided, however, that the following are excluded from this proposed Class: (i) the defendants, and (ii) any employee of a defendant.

C.     On information and belief, there is no less than 1,000 class members in each respective class.

9

39.     This action is suitable for class treatment pursuant to Florida Rule of Civil Procedure 1.220(b)(3).

40.     The claims of Plaintiff are typical of the claims of all of the other members of the respective Classes.

41.     Plaintiff will fairly and adequately represent and protect the interests of the other members of the respective classes. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions.  Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the other members of the Classes, and have the financial resources to do so.  Neither Plaintiff nor her counsel has any interest adverse to those of the other members of the Classes.

42.     Absent a class action, most members of the Classes would find the cost of litigating their claims to be prohibitive, and will have no effective remedy.  The class treatment of common questions of law and fact is also superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants, and promotes consistency and efficiency of adjudication.

43.     Defendants have acted and failed to act on grounds generally applicable to the plaintiff and the other members of the respective Classes, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes.

44.     The factual and legal bases of Defendants' liability to Plaintiff and to the other members of the respective Classes are the same, resulting in injury to the Plaintiff and to all of the other members of the Classes.  Plaintiff and the other Class members have all suffered harm and damages as a result of Defendants' unlawful and wrongful conduct.

10

45.     There are many questions of law and fact common to the claims of Plaintiff and the other members of the respective Classes, and those questions predominate over any questions that may affect individual members of the Classes.  Common questions for the Carrier Class include but are not limited to the following:

(a)     Whether Verizon's conduct described herein is in breach of contract.

46.     Common questions for the Mobile Content Provider Class include:

(a)     Whether Mobile Messenger has unjustly received money belonging to Plaintiff and the Mobile Content Provider Class and whether under principles of equity and good conscience, Mobile Messenger should not be permitted to retain it;

(b)     Whether Mobile Messenger tortiously interfered with contracts between Plaintiff and the Mobile Content Provider Class, on the one hand, and their wireless carriers, on the other hand, by causing them to be charged for products and services by their carrier that were unauthorized.

### Count I
### (Breach Of Contract on behalf of the Carrier Class)

47.     Plaintiff incorporates by reference the foregoing allegations.

48.     Plaintiff and the Carrier Class entered into substantially identical agreements with Defendant Verizon whereby Plaintiff and the Verizon agreed to pay a certain sum of money in exchange for Verizon's activation of Plaintiff and the Verizon's cellular telephone account and its promise to provide various communication and related services to Plaintiff and the Carrier Class.

11

49.     Defendant Verizon expressly and/or impliedly agreed to provide Plaintiff and the Carrier Class with a cellular telephone number free of unauthorized charges for third-party products and services.

50.     Defendant Verizon further expressly and/or impliedly agreed to bill Plaintiff and the Carrier Class only for products or services the purchase of which they had authorized.

51.     Defendant Verizon further expressly and/or impliedly agreed to carry out its obligations in good faith and fair dealing.

52.     Defendant Verizon breached its contractual obligations by providing Plaintiff and the Carrier Class with cellular telephone accounts that included unauthorized charges for mobile content.

53.     Defendant Verizon further breached its contractual obligations, including its contractual obligation of good faith and fair dealing, by thereafter billing Plaintiff and the Carrier Class for products or services, the purchase of which they never authorized.

54.     The aforementioned breaches of contract have proximately caused the Plaintiff and the Carrier Class economic injury and other damages.

### Count II
### (Restitution/Unjust Enrichment on behalf of the Mobile Content Provider Class)

55.     Plaintiff incorporates by reference the foregoing allegations.

56.     A benefit has been conferred upon Mobile Messenger by Plaintiff and the Mobile Content Provider Class. Mobile Messenger has received and retains money belonging to Plaintiff and the Mobile Content Provider Class resulting from their billing and collecting significant amounts of money in unauthorized mobile content charges.

57.     Mobile Messenger appreciates or have knowledge of said benefit.

12

58.     Under principles of equity and good conscience, Mobile Messenger should not be permitted to retain the money belonging to Plaintiff and the Mobile Content Provider Class which Mobile Messenger has unjustly received as a result of its actions.

## Count III
## (Tortious Interference with a Contract on behalf of the Mobile Content Provider Class)

59.     Plaintiff incorporates by reference the foregoing allegations.

60.     Plaintiff and the Mobile Content Provider Class had contractual relationships with their wireless carriers whereby they agreed to pay a certain sum of money in exchange for activation of their cellular telephone accounts and their carriers' promise to provide various communication and related services to Plaintiff and the Mobile Content Provider Class and to bill Plaintiff and the Mobile Content Provider Class only for products or services the purchase of which they had authorized.

61.     Mobile Messenger knew of said contractual relationships and intended to and did induce a breach or disruption of the contractual relationships.

62.     Mobile Messenger intentionally interfered with said contractual relationship through improper motives and/or means by knowingly and/or recklessly continually causing to be placed on the cellular telephone bills of cellular telephone owners across the nation unauthorized charges.

63.     Plaintiff and the Mobile Content Provider Class suffered loss as a direct result of the conduct of Mobile Messenger.

WHEREFORE, Plaintiff Lisa Gray, on behalf of herself and the Classes, prays for the following relief:

13

a.    Certify this case as a class action on behalf of the Classes as defined above and appoint Jennifer Baker Class Representative, and appoint, XXX as lead counsel;

b.    Declare that the actions of Verizon, as set out above, constitute a breach of contract;

c.    Enter judgment against Verizon for all economic, monetary, actual, consequential, and compensatory damages caused by its conduct, and if its conduct is proved willful, award Plaintiff and the Carrier Class exemplary damages;

d.    Declare that the actions of Mobile Messenger, as set out above, constitute unjust enrichment and tortious interference with a contract;

e.    Enter judgment against Mobile Messenger for all economic, monetary, actual, consequential, and compensatory damages caused by Defendants' conduct, and if its conduct is proved willful award Plaintiff and the Mobile Content Provider Class exemplary damages;

f.    Award Plaintiff and the Classes reasonable costs and attorneys' fees;

g.    Award Plaintiff and the Classes pre- and post-judgment interest;

h.    Enter judgment for injunctive, statutory and/or declaratory relief as is necessary to protect the interests of Plaintiff and the Classes; and

i.    Award such other and further relief as equity and justice may require.

## JURY DEMAND

Plaintiff requests trial by jury of all claims that can be so tried.

December 20, 2007

Lisa Gray, individually and on behalf of a class of similarly situated individuals

David P. Healy (940410)
2846-B Remington Green Cr.
Tallahassee, FL 32308
(850) 222-5400
(850) 222-7339 (fax)
Attorney for Plaintiff

14

STATE OF FLORIDA
BROWARD COUNTY
I DO HEREBY CERTIFY the within and foregoing is a true and correct copy of the original as it appears on record and file in the office of the County Clerk of Broward County, Florida. JAN 3 0 2008
WITNESS my hand and Official Seal at Fort Lauderdale Florida, this the _____ day of _____ 20 ____
Clerk of the Court
Deputy Clerk

# EXHIBIT C

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

| | | |
|---|---|---|
| LISA GRAY, individually and on behalf of a class of similarly situated individuals, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. _____ |
| CELLCO PARTNERSHIP, a Delaware General Partnership d/b/a Verizon Wireless, and MOBILE, MESSENGER AMERICAS, INC., a Delaware corporation, | ) ) ) ) ) | |
| Defendants. | ) ) | |

## DECLARATION OF BILL MEDRANO IN SUPPORT OF
## CELLCO PARTNERSHIP'S NOTICE OF REMOVAL

I, BILL MEDRANO, declare:

    1.    I am employed with Verizon Wireless ("Verizon") as a supervisor in the Revenue Assurance Department located in Orangeburg, New York. I am familiar with the facts set forth in this declaration and could testify to these facts under oath from my own personal knowledge. I submit this declaration in support of the removal petition filed in the above captioned action.

    2.    Verizon maintains a data warehouse that resides on an NCR teradata platform that contains customer data. The data warehouse is maintained in the ordinary course of business, and it is frequently used by Verizon to run queries of billing information regarding wireless subscribers. In particular, the data warehouse enables Verizon to run queries for information relating to billing for mobile content service, also known as premium messaging services.

    3.    Verizon ran a search of the data on the NCR teradata platform for all premium messaging charges to customers with a current or last known billing address within the State of Florida. The results show that in 2007, Verizon wireless customers in the State of Florida who have subscribed for premium messaging services, were billed in excess of $12,000,000.00 for such premium messaging services. In addition, the results showed that since the inception of premium messaging service in 2005, Verizon customers in the State of Florida have been billed in excess of $24,000,000.00 for such services.

Executed this 30 day of January 2008, in Orangeburg, New York.

I declare under the penalty of perjury under the laws of the United States that the foregoing is true and correct.

Bill Medrano
Bill Medrano

2

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE SIDE OF THE FORM.)

| I(a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Lisa Gray | Cellco Partnership, a Delaware General Partnership d/b/a Verizon Wireless, and Mobile Messenger Americas, Inc. |

| (b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF (EXCEPT IN U.S. PLAINTIFF CASES)  Florida | COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT (IN U.S. PLAINTIFF CASES ONLY) NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED |
|---|---|

| (c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)  David P. Healy, Esq., 2846-Remington Green Cr., Tallahassee, FL 32308 | ATTORNEYS (IF KNOWN)  Marcos Jiménez, Esq., 201 S. Biscayne Blvd., #1100, Miami, FL 33131 PH: (305) 373-1000 |
|---|---|

(d) CIRCLE COUNTY WHERE ACTION AROSE:
DADE, MONROE, BROWARD, PALM BEACH, MARTIN, ST. LUCIE, INDIAN RIVER, OKEECHOBEE, HIGHLANDS

## II. BASIS OF JURISDICTION (PLACE AN X ONE BOX ONLY)

- ☐ 1. U.S. Government Plaintiff
- ☐ 3. Federal Question (U.S. Government Not a Party)
- X 2. U.S. Government Defendant
- ☐ 4. Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES
(For Diversity Case Only) (PLACE AN X IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | X 1 | ☐ 1 | Incorporated and Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | X 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | | ☐ 6 |

*FTL-08 CV 60146   Altonaga/Turnoff*

## IV. CAUSE OF ACTION

Breach of contract, restitution/unjust enrichment, tortious interference with contract. (Removed under 28 U.S.C. §§ 1332, 1446 and 1453).

IVa. __14__ days estimated (for both sides) to try entire case

## V. NATURE OF SUIT (PLACE AN X IN ONE BOX ONLY)

| A CONTRACT | PERSONAL INJURY | A TORTS | B FORFEITURE PENALTY | A BANKRUPTCY | A OTHER STATUS |
|---|---|---|---|---|---|
| ☐ 110 Insurance | | | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 States Reappointment |
| ☐ 120 Marine | PERSONAL INJURY | | ☐ 620 Other Food & Drug | ☐ 423 withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | | | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 310 Airplane | ☐ 362 Personal Injury-Med Malpractice | ☐ 630 Liquor Laws | A PROPERTY RIGHTS | ☐ 450 Commerce/ICC Rates/etc. B |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury-Product Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personnel Injury | ☐ 650 Airline Regs | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl Veterans) B | ☐ 330 Federal Employers' Liability | PERSONAL PROPERTY | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits B | ☐ 340 Marine | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 160 Stockholder's Suits | ☐ 345 Marine Product Liability | ☐ 371 Truth in Lending | | B SOCIAL SECURITY | ☐ 875 Customer Challenge 12 USC 3410 |
| X 190 Other Contract | ☐ 350 Motor Vehicle | ☐ 380 Other Personal Property Damage | | ☐ 861 HIA (1395f) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | ☐ 355 Motor Vehicle Product Liability | ☐ 385 Property Damage Product Liability | A LABOR | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| | ☐ 360 Other Personal Injury | | ☐ 710 Fair Labor Standards Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| | | | ☐ 720 Labor/Management Relations B | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| | | | ☐ 730 Labor Management Reporting & Disclosure Act | ☐ RSI (405(g)) | ☐ 895 Freedom of Information Act |

| A REAL PROPERTY | A CIVIL RIGHTS | B PRISONER PETITIONS | | A FEDERAL TAX SUITS | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
|---|---|---|---|---|---|
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ Motions to Vacate Sentence Habeas Corpus | ☐ 740 Railway Labor Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 950 Constitutionality of State Statutes |
| ☐ 220 Foreclosure B | ☐ 442 Employment | ☐ 530 General | ☐ 790 Other Labor Litigation | ☐ 871 IRS-Third Party 26 USC 7609 | ☐ 890 Other Statutory Actions* *A or B |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | ☐ 535 Death Penalty | ☐ 791 Employee Ret. Inc. Security Act B | | |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 540 Mandamus and Other* | | | |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 550 Civil Rights | | | |
| ☐ 290 All Other Real Property | | *A or B | | | |

FILED by ___ INTAKE    D.C.
JAN 31 1 2008
CLARENCE MADDOX (illegible)
CLERK U.S. DIST. CT.
S.D. OF FLA. – MIAMI

## VI. ORIGIN (PLACE AN X IN ONE BOX ONLY)

- ☐ Original Proceeding
- X Removed from State Court
- ☐ Remanded from Appellate Court
- ☐ Refiled
- ☐ Transferred from another district (specify)
- ☐ 6. Multidistrict Litigation

## VII. REQUESTED IN COMPLAINT

CHECK IF THIS IS A X UNDER F.R.C.P. 23 CLASS ACTION

DEMAND Over $5,000,000

☐ Check YES only if demanded in complaint
JURY DEMAND: X YES   ☐ NO

## VIII. RELATED CASE(S) IF ANY

(See Instructions)   JUDGE _____   JUDGE _____

DATE   January 31, 2008

SIGNATURE OF ATTORNEY OF RECORD

UNITED STATES DISTRICT COURT

FOR OFFICE USE ONLY: Receipt No. 974142   Amount: $350.00

01/31/08